**FILED**

ORDERED PUBLISHED

OCT 11 2005

HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NC-04-1534-BMaS |
| PATRICIA ANN LEHTINEN, | |
| Debtor. | Bk. No. 03-46972 |
| JIM G. PRICE, | |
| Appellant, | |
| v. | **O P I N I O N** |
| PATRICIA ANN LEHTINEN; MARTHA G. BRONITSKY, Chapter 13 Standing Trustee; UNITED STATES TRUSTEE, | |
| Appellees. | |

Argued and Submitted on June 24, 2005
at Sacramento, California

Filed – October 11, 2005

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Randall J. Newsome, Chief Bankruptcy Judge, Presiding

Before:  BRANDT, MARLAR, and SMITH, Bankruptcy Judges.

1  represent her both as counsel in her bankruptcy case and as broker
2  in listing her house for sale, but did not disclose the potential
3  conflict of interest inherent in such dual representation.

4      Near the end of October, debtor contacted Price to tell him she
5  intended to file bankruptcy and also that she wanted to borrow money
6  to fix her house before selling it.  Price agreed to represent her
7  and filed her chapter 13 petition on 2 December 2003 on the eve of
8  a scheduled foreclosure, and later filed a plan.

9      On 19 February 2004 debtor attended the § 341 first meeting of
10  creditors.  Without informing debtor, Price sent attorney Cal
11  Zamanski, who is not an employee of his law firm, in his stead.  At
12  the § 341 meeting, the chapter 13 trustee objected to debtor's plan,
13  which provided for a 10% payout to unsecured creditors.  Zamanski
14  informed debtor that because of the substantial equity in her house,
15  her plan would not be confirmed without an amendment to pay 100% to
16  her creditors.  Price sent debtor an amended plan for signature,
17  which she never signed.

18      The trustee served a notice of the 3 June 2004 confirmation
19  hearing on Price and the debtor.  Meanwhile, Price had contacted
20  Rene Boisvert of Boulevard Equity Group about obtaining a loan for
21  debtor to fix up her house.  Boisvert told debtor that Boulevard
22  would lend her the funds, pay off the first deed of trust held by
23  Washington Mutual, and that Boulevard would be repaid from the
24  proceeds of sale. As a condition of the loan, debtor had to retain
25  Price  as  broker  for  the  sale,  because  Boisvert  wanted  a
26  "professional" involved.  At some point debtor became uncomfortable
27  with these terms, and never completed the loan documents.

28

-3-

In April 2004 debtor again met with Price, as she was concerned about her home being sold at a foreclosure sale without her knowledge. Price contacted the trustee and Washington Mutual and learned that the house had not yet been foreclosed, but that debtor was delinquent post-petition on her mortgage and plan payments. He advised debtor that her case could be dismissed, told her to contact the trustee to get caught up on plan payments, and to list the home to obtain a quick sale.

Price indicated to debtor his opinion that her home was worth $340,000-$345,000. Debtor, who apparently has a background as a realtor, disagreed, based on her knowledge of comparable sales in the area and the condition of her home. She believed that the house could be sold for around $400,000. Transcript, 26 July 2004, at 22:17-18 and 34:6-7.

Around this time Price inquired of the United States Trustee ("UST") about serving as a real estate broker in a case in which he was also debtor's counsel. The UST's office advised that it would object to Price's appointment as a broker because he would fail the disinterestedness requirement of § 327.

Debtor testified she called the trustee's office in late April, and was advised that she had until the confirmation hearing either to sell or refinance her home, or amend her plan, and that she was required to attend the hearing. Debtor testified that this was the first time she heard of the confirmation hearing. Debtor called Price and told him she wanted to sell her home. She did not inform Price that she had already listed her home with a family friend and accepted an offer on 20 May 2004 for $390,000; the transaction closed 23 July 2004. Findings of Fact, Opinion, and Conclusions of

-4-

Law ("Opinion"), at 5 and 7.

Price did not appear at the confirmation hearing. At the request of another client, he had agreed to appear at 1:00 p.m. that afternoon in Alameda County Superior Court, although he knew it conflicted with the 2:00 p.m. confirmation hearing. He did not request a continuance of either hearing. Debtor went to the confirmation hearing alone, and informed the court of the pending sale. The court confirmed the plan with a 100% payout to unsecured creditors, conditioned upon close of escrow within 60 days. Opinion, at 6.

Without verifying the outcome of the confirmation hearing, Price wrote debtor a letter the next day stating that her case had been dismissed and that Washington Mutual could proceed with the foreclosure sale on 10 June 2004. He proposed refiling another case or listing the home for sale. When debtor later asked Price to explain why he had written the letter, he responded that he was trying to get her to stop procrastinating and "do something." She then informed Price of the pending sale and the plan confirmation. Opinion, at 6.

At the confirmation hearing, the bankruptcy court issued an order to show cause ("First OSC") why Price should not have to disgorge compensation received from the debtor for his failure to appear at both the § 341 meeting and confirmation hearing. At the 8 July hearing on the First OSC, the court ordered Price to disgorge $300 of the $1500 fee he charged debtor. Opinion, at 7.

Later the same day, debtor filed a letter alleging that Price had "blatantly lied" to her about the dismissal of her case, had asked her to pay him to file another bankruptcy, and retain him to

-5-

list her house.  Her letter reported that Price "continually tried to secure my home as a listing under his real estate company," and that when she went to obtain a loan from Price's "friend," the loan was conditioned upon her using Price as listing broker.  Although Price had suggested she list her home at $340,000 for a "quick sale," she sold the home without any repairs for $390,000 after listing it for only one and a half weeks.  Debtor concluded: "I really feel Mr. Price is an unethical attorney/realtor with grave conflicts of interest issues."

On 13 July the court issued another order, attaching debtor's letter and requiring Price to "show cause why he should not be sanctioned pursuant to the court's inherent sanction powers . . . for bad faith conduct [and/or] suspended or disbarred." ("Second OSC").  At the hearing on the Second OSC, at which both Price and the debtor testified, the court found:

> 1. Price violated California Rules of Professional Conduct 3-500,[2] and California Business and Professions Code §6068(m),[3] when he failed to disclose to the Debtor that Zamanski would appear and represent her at the Meeting of Creditors, and when he failed to obtain the Debtor's consent to Zamanski's representation of her at the Meeting of Creditors.

_____

[2]    California RPC 3-500 provides: "A member shall keep a client reasonably informed about significant developments relating to the employment or representation, including promptly complying with reasonable requests for information and copies of significant documents when necessary to keep the client so informed."

[3]    That section provides:

It is the duty of an attorney to do all of the following:

. . . .

(m) To respond promptly to reasonable status inquiries of clients and to keep clients reasonably informed of significant developments in matters with regard to which the attorney has agreed to provide legal services.

2. Price violated California Rule of Professional Conduct 3-500, and California Business and Professions Code §6068(m), when he failed to inform the Debtor of the Confirmation Hearing.

3. Price violated California Rule of Professional Conduct 3-110(A),[4] when he intentionally failed to appear and represent the Debtor at the Meeting of Creditors and the Confirmation Hearing.

4. Price violated the basic duties an attorney owes to a client to represent the Debtor with undivided loyalty, to exercise independent judgment on the Debtor's behalf, and to act in the Debtor's best interests.

Opinion, at 15-16. The court ordered Price to disgorge the balance of the fees debtor had paid him, suspended him from the practice of law in the U.S. Bankruptcy Court for the Northern District of California for three months, beginning 22 October 2004, and directed that a copy of its Opinion be forwarded to the California State Bar.

Price timely appealed, and we granted his motion for stay pending appeal of the suspension provision. At oral argument Price indicated that he does not dispute the disgorgement sanction.

No appellees briefed or argued this appeal. We invited amicus briefs, and one was filed by David A. Smyth, appellant in an appeal to us concerning similar issues. In re Brooks-Hamilton, 329 B.R. 270 (9th Cir. BAP 2005).

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2)(A), and we do under 28 U.S.C. § 158(c).

We note parenthetically that Price does not challenge, on appeal, the bankruptcy court's power to enter a final judgment under

---

[4]   RPC 3-110(A) provides: "A member shall not intentionally, recklessly, or repeatedly fail to perform legal services with competence."

-7-

1  28 U.S.C. § 157, nor, so far as we can tell, did he in the
2  bankruptcy court. Accordingly, he has waived any issue respecting
3  the core or non-core nature of the disciplinary proceeding: "[A]n
4  appellate court will not consider issues not properly raised before
5  the [trial] court. Furthermore, on appeal, arguments not raised by
6  a party in its opening brief are deemed waived." Smith v. Marsh,
7  194 F.3d 1045, 1052 (9th Cir. 1999). See also In re Sedona Inst.,
8  220 B.R. 74, 76 (9th Cir. BAP 1998), In re Jodoin, 209 B.R. 132, 143
9  (9th Cir. BAP 1997), and Laboa v. Calderon, 224 F.3d 972, 980 n.6
10 (9th Cir. 2000).

11     In any event, as the acts or actions on which Price's
12 suspension was predicated took place in the course of his
13 representation of debtor in matters central to the administration of
14 her case, the disciplinary proceeding fits comfortably within the
15 ambit of a core proceeding, 28 U.S.C. § 157(b)(2)(A), for the
16 reasons ably and persuasively articulated in Part III of the dissent
17 in In re Sheridan, 362 F.3d 96, 121-126 (1st Cir. 2004) (Lynch, J.,
18 dissenting). The majority in Sheridan, ruling on the core/non-core
19 question, held that an omnibus disciplinary proceeding (i.e., not
20 arising out of a single case) is a non-core matter, and that the
21 disciplined attorney's consent to entry of a final judgment by the
22 bankruptcy court could not be presumed.

23     Because Price failed to raise the core/non-core and consent
24 issues in the bankruptcy court, and has waived them on appeal, we
25 need not and do not reach these questions.

26

27                    III.  ISSUE

28     Whether the bankruptcy court abused its discretion in ordering

-8-

1  a sanction of suspension.

2

3                    **IV.   STANDARDS OF REVIEW**

4       We review an award of sanctions and the terms of a disciplinary
5  order for abuse of discretion.  <u>In re DeVille</u>, 280 B.R. 483, 492
6  (9th Cir. BAP 2002), <u>aff'd</u>, 361 F.3d 539 (9th Cir. 2004) (citing <u>In</u>
7  <u>re Rainbow Magazine, Inc.</u>, 77 F.3d 278, 283 (9th Cir. 1996));
8  <u>Crayton</u>, 192 B.R. at 975.

9       A trial court's interpretation and application of a local rule
10 is reviewed for abuse of discretion.  <u>Id.</u>; <u>In re Mendez</u>, 231 B.R.
11 86, 88 (9th Cir. BAP 1999), <u>aff'd</u>, 230 F.3d 1367 (9th Cir. 2000)
12 (table).

13      A bankruptcy court necessarily abuses its discretion if it
14 bases its decision on an erroneous view of the law or clearly
15 erroneous factual findings.  <u>Cooter & Gell v. Hartmarx Corp.</u>, 496
16 U.S. 384, 405 (1990).  Under the abuse of discretion standard, we
17 "must have a definite and firm conviction that the bankruptcy court
18 committed a clear error of judgment in the conclusion it reached
19 before reversal is proper."  <u>In re Black</u>, 222 B.R. 896, 899 (9th
20 Cir. BAP 1998) (citations and quotation marks omitted).

21      We review findings of fact for clear error.  Rule 8013.  A
22 factual finding is clearly erroneous if the appellate court, after
23 reviewing the entire record, has a firm and definite conviction that
24 a mistake has been committed.  <u>Anderson v. Bessemer City</u>, 470 U.S.
25 564, 573 (1985).  If two views of the evidence are possible, the
26 trial judge's choice between them cannot be clearly erroneous.  <u>Id.</u>
27 at 574.  Findings of fact based upon credibility are given
28 particular deference by appellate courts.  <u>Id.</u> at 575.  <u>See also In</u>

                                -9-

re Padilla, 213 B.R. 349, 352 (9th Cir. BAP 1997). A court may disbar or suspend an attorney only upon clear and convincing evidence. Crayton, 192 B.R. at 975.

Finally, due process is a question of law which we review de novo, DeVille, 280 B.R. at 492.

## V. DISCUSSION

At the outset, Price challenges the bankruptcy court's authority to discipline attorneys. Our review of a disciplinary order also focuses on whether the procedure followed by the bankruptcy court afforded appellant sufficient due process, whether the evidence supports the findings, and whether the penalty imposed was reasonable. Crayton, 192 B.R. at 978.

We conclude that the bankruptcy court could discipline Price and afforded him due process. He has not shown that the bankruptcy court clearly erred in its factual findings, nor that it lacked clear and convincing evidence. Thus discipline was appropriate, but the bankruptcy court did not consider the ABA Standards in determining the appropriate sanction. We vacate and remand for that purpose.

### A. Bankruptcy Court Authority

The bankruptcy court possesses the inherent authority "to impose sanctions for a pattern of bad faith conduct that transcends conduct addressed by particular rules or statutes." DeVille, 280 B.R. at 494 (citing § 105(a)); Chambers v. NASCO, Inc., 501 U.S. 32, 51 (1991); and In re Rainbow Magazine, Inc., 77 F.3d 278, 283-84 (9th Cir. 1996). Congress implicitly recognized this inherent power

-10-

in enacting § 105(a):

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

See Rainbow Magazine, 77 F.3d at 284; see also In re Dyer, 322 F.3d 1178, 1189-90 (9th Cir. 2003) (discussing contempt authority).

Section 105 empowers bankruptcy courts to impose civil but not criminal or punitive sanctions. Dyer, 322 F.3d at 1197. In Dyer, the Ninth Circuit considered the propriety of monetary sanctions imposed against a creditor for violations of the automatic stay. In addition to ordering the creditor to pay the trustee's fees and costs, the bankruptcy court imposed a sanction of $50,000. The Circuit held that this was a punitive sanction not authorized under the bankruptcy court's contempt authority or its inherent authority, and noted that a civil penalty is either compensatory or is designed to coerce compliance. To the extent that a penalty does not so operate, it is a criminal penalty or sanction. Dyer, 322 F.3d at 1192. The Circuit concluded that "[t]he bankruptcy court's inherent sanction authority . . . , like its civil contempt authority, does not authorize significant punitive damages, so the punitive sanctions cannot stand, whatever [creditor's] degree of culpability." Id. at 1197.

We have observed that the bankruptcy court's inherent authority includes the power to suspend or disbar attorneys who appear before it. Crayton, 192 B.R. at 976. At first glance, Dyer appears to cast doubt on that proposition. Dyer clarifies that neither

-11-

contempt nor inherent authority authorizes the bankruptcy court to impose punitive or criminal sanctions. The <u>Dyer</u> court was concerned with the lack of due process protections that a criminal defendant is ordinarily entitled to, such as the right to a jury trial. <u>Dyer</u>, 322 F.3d at 1197. It noted that "the bankruptcy court is unable to preside over a jury trial absent explicit consent from the parties and the district court[,]" and that "allowing a non Article III court to adjudicate criminal contempt raises fundamental constitutional questions." <u>Id.</u> at 1194 (citations omitted).

As attorney suspension and disbarment are neither compensatory nor designed to coerce compliance, they are arguably criminal sanctions, but "[a] lawyer disciplinary proceeding is not a criminal proceeding." <u>Rosenthal v. Justices of the Supreme Court of California</u>, 910 F.2d 561, 564 (9th Cir. 1990). It is "neither civil nor criminal, but an investigation into the conduct of the lawyer-respondent." <u>Canatella v. California</u>, 404 F.3d 1106, 1110 (9th Cir. 2005) (citation and quotation marks omitted). <u>See also</u> <u>In re Echeles</u>, 430 F.2d 347, 349 (7th Cir. 1970) (disbarment and suspension proceedings are special proceedings resulting from the court's inherent power over their officers).

Accordingly, the "normal protections afforded a criminal defendant do not apply." <u>Rosenthal</u>, 910 F.2d at 564. An attorney subject to disciplinary action is not entitled to the presumption of innocence, the "beyond a reasonable doubt" burden of proof, confrontation of witnesses, <u>id.</u> at 564-65, or a jury trial. <u>See also</u>, <u>In re Smith</u>, 123 F. Supp. 2d 351, 354 (N.D. Tex. 2000), <u>aff'd</u>, 275 F.3d 42 (5th Cir. 2001) (table) (attorney subject to disciplinary proceedings not entitled to jury trial or full

-12-

evidentiary hearing under the Sixth Amendment). <u>Dyer</u> therefore does not require us to hold that a bankruptcy court lacks authority to suspend or disbar the attorneys who appear before it.

**B.    Disciplinary Procedure**

We have observed that "[t]here is no uniform procedure for disciplinary proceedings in the federal system.   Instead, the individual judicial districts are free to define the rules to be followed and the grounds for punishment." <u>Crayton</u>, 192 B.R. at 976 n.7 (citation omitted).

In the Northern District of California, the bankruptcy court is empowered to supervise and discipline attorneys via BLR 1001-2, which incorporates CLR 11-1 through 11-9, relating to attorneys appearing in that district.    CLR 11-6, entitled "Discipline," provides:.

> (a) General.   In the event that a Judge has cause to believe that an attorney has engaged in unprofessional conduct, the Judge may do <u>any or all</u> of the following:
>
> (1) Initiate proceedings for civil or criminal contempt under Title 18 of the United States Code and Rule 42 of the Federal Rules of Criminal Procedure;
>
> (2) Impose other appropriate sanctions;
>
> (3) Refer the matter to the appropriate disciplinary authority of the state or jurisdiction in which the attorney is licensed to practice;
>
> (4) Refer the matter to the Court's Standing Committee on Professional Conduct; or
>
> (5) Refer the matter to the Chief Judge for her or him to consider whether to issue an order to show cause under Civ. L.R. 11-7.

(emphasis added).

The bankruptcy court apparently imposed the suspension here at

-13-

1  issue based on subsection (2), which authorizes "other appropriate
2  sanctions."

3      We have recommended that matters involving attorney discipline
4  be referred to the Standing Committee. Crayton, 192 B.R. at 978.
5  The rationale for this recommendation is that it "relieves a court
6  from serving in the dual roles of prosecutor and arbiter in the
7  investigation, prosecution and discipline of attorneys." Id. The
8  authorities do not require such a referral. Brooks-Hamilton, 329
9  B.R. at 286. There, in a case arising from the same district as
10 this one, we upheld a six-month suspension from practice for
11 repeated Rule 9011 violations, as well as a compensatory monetary
12 sanction. The suspended attorney's arguments there were procedural:
13 no referral to standing committee, no finding of bad faith, and
14 consideration of his prior failures in other cases, rather than lack
15 of bankruptcy jurisdiction to suspend. He did cite Dyer, but for
16 the proposition that a finding of bad faith is required. We ruled
17 to the contrary.

18     CLR 11-6 authorizes the court to take "any or all" of the
19 listed actions. Subsection 2 authorizes the court to impose "other
20 appropriate sanctions." Under subsection 3, the court may refer the
21 matter to the state bar (an "appropriate disciplinary authority"),
22 and under subsection 4 it may refer the matter to the Standing
23 Committee.

24     Contrary to Price's assertions, the bankruptcy court had
25 authority to impose its own sanctions in addition to referring the
26 matter to the State Bar of California (more precisely, the court
27 forwarded a copy of the Opinion "for its review and consideration").
28 Opinion, at 16. Nor did the court err in not referring the matter

-14-

1  to the Standing Committee.

3  **C.  Due Process**

4       Price argues that he did not receive adequate notice of the
5  particular alleged misconduct or the disciplinary rule upon which
6  the court intended to base sanctions.

7       Due process is, of course, required.  An attorney subject to
8  discipline is entitled to notice of the precise nature of the
9  charges leveled against him and an opportunity to be heard.
10  <u>Crayton</u>, 192 B.R. at 978 (citing <u>In re Ruffalo</u>, 390 U.S. 554, 550
11  and 552 (1968)).  As the Ninth Circuit noted in affirming our
12  opinion in <u>Deville</u>, "Ordinarily a court proposing to impose
13  sanctions notifies the person charged both of the particular alleged
14  misconduct and of the particular disciplinary authority under which
15  the court is planning to proceed."  361 F.3d at 548.

16       The Second OSC identifies four instances of alleged misconduct:
17  (1) Price's failure to inform debtor of her confirmation hearing;
18  (2) his pressuring of the debtor to list her house for sale with his
19  brokerage firm; (3) the lender's (Boisvert's) condition of retaining
20  Price as the broker for the loan transaction; and (4) his letter to
21  the debtor erroneously informing her that her bankruptcy case had
22  been dismissed and that a foreclosure sale was imminent.  The OSC
23  further states that "the facts point to a clear conflict of interest
24  between Mr. Price acting as the debtor's lawyer, soliciting the
25  debtor to use his services as a real estate broker, and serving as
26  a loan broker."  It cites to Cal. Eth. Op. 1982-69, 1982 WL 31793
27  (Cal. St. Bar Comm. Prof. Resp. 1982), which states that while an
28  attorney may ethically act as both attorney and real estate broker

-15-

in the same transaction, such dual representation presents substantial risks. The attorney must conform to the standards of both professions; in the case of conflict, the State Bar of California standards control.

Although the Second OSC did not cite to the provisions it ultimately relied upon, it notified Price that the court was considering sanctions, including suspension or disbarment, and specified the sanctionable conduct and the evidence required. In short, it adequately informed him of the offending conduct and charges so that he could prepare an adequate defense.

Price also had the opportunity to present evidence on the issue of his failure to inform debtor of the substitution of counsel for the § 341 meeting, and did so. As the other derelictions found by the bankruptcy court support the sanction imposed, any error in not mentioning that conduct in the Second OSC was harmless. 28 U.S.C. § 2111; In re Maximus Computers, Inc., 278 B.R. 189, 194 (9th Cir. BAP 2002).

The bankruptcy court afforded Price due process.

**D.    Evidence**

    1.    Adequacy?:

The bankruptcy court found:

    a.    Zamanski's involvement as an appearance attorney at debtor's 341 meeting was a significant development. Price was required to disclose and obtain debtor's consent to Zamanski's involvement, but failed to do so. Opinion at 9-10.

    b.    Price failed to inform the debtor that she was required to

-16-

attend the confirmation hearing. _Id._ at 10-11.

    c.    Price intentionally failed to appear at the confirmation hearing. _Id._ at 12-13.

    d.    Price's numerous solicitations to serve as the debtor's real estate broker, his cavalier valuation of her home, and his failure to focus solely on the debtor in her case conflicted with his duties to act with undivided loyalty and exercise independent judgment on behalf of debtor's best interests. His conduct was outrageously improper, unprofessional and unethical. _Id._ at 14-15.

In addition, the bankruptcy court found much of Price's testimony not credible. _Id._ at 10, 12.

Price argues that the bankruptcy court erred in imposing sanctions without first making a finding of bad faith by clear and convincing evidence, citing _Crayton_, 192 B.R. at 975. _Crayton_ does not support the proposition that a bad faith finding is required for suspension. While acknowledging that a bad faith finding is generally required before a court may impose sanctions under its inherent powers, we concluded that a bad faith requirement does not necessarily extend to "every possible disciplinary exercise of the court's inherent power, especially where it is exercised to protect the public against unqualified practitioners." _Id._ at 977. In the Ninth Circuit, a court may also sanction upon a finding of willfulness, recklessness, or other fault by the offending party, and if a bad faith finding is required, an implicit finding will suffice. _See id._ (citing _Unigard Sec. Ins. v. Lakewood Eng'g & Mfg._, 982 F.2d 363, 368 n.2 (9th Cir. 1992); _Hedges v. Resolution Trust Corp._, 32 F.3d 1360, 1363 (9th Cir. 1994); and _Toombs v._

-17-

1  Leone, 777 F.2d 465, 471 (9th Cir. 1985)).  The bankruptcy court's
2  findings suffice under these standards.

3      Next, Price argues the bankruptcy court clearly erred in
4  finding "[t]hereafter, the Court issued an order for Price to appear
5  on July 26th and show cause why he should not be sanctioned and/or
6  suspended or disbarred from practice before this Court for the
7  conduct described in the Debtor's July 8, 2004 letter."  Price
8  contends that the Second OSC "simply ordered appellant to appear and
9  show cause why he should not be sanctioned for bad faith conduct.
10 It did not refer to debtor's letter."  This is simply incorrect:
11 the Second OSC, attached to which is a copy of debtor's 8 July
12 letter, states, "[T]he court received a facsimile from the debtor
13 (attached Exhibit A) which raises serious ethical issues regarding
14 Mr. Price's conduct in this case."  Second OSC, page 2, lines 5-6.

15

16      2.  <u>Clear and convincing?</u>

17      Price also argues that the evidence was not clear and
18 convincing, and thus that the bankruptcy court clearly erred in
19 finding that he:

20      a.   "did not obtain the Debtor's consent for Zamanski to
21           represent her at the Meeting of Creditors."  Opinion at 3.
22      b.   "went to view the Debtor's house and valued it at $340,000
23           to $345,000 for a quick sale. . . . No evidence was
24           presented of any additional efforts by Price to determine
25           the value of the house."  <u>Id.</u> at 4.
26      c.   "then told the Debtor that she needed to file an amended
27           plan or fix the house and sell it, and encouraged her to
28           list the house at $340,000 'as is' for a quick sale." <u>Id.</u>

-18-

d. "responded that he was trying to get her to stop procrastinating and do something." Id. at 7.

To review a factual finding for clear error, we must have before us the entire transcript and all other relevant evidence considered by the bankruptcy court. In re Massoud, 248 B.R. 160, 163 (9th Cir. BAP 2000). So, too, to review for compliance with the higher "clear and convincing" standard. Price provided neither a complete transcript of the evidentiary hearing nor, most importantly, the portion of the transcript containing the bankruptcy judge's examination of the debtor, which was most likely to support the disputed findings. Further, we are to give particular deference to the bankruptcy court's findings of fact that are based upon credibility. Anderson, 470 U.S. at 575.

It is Price's burden to show clear error, and his responsibility to provide an adequate record. Massoud, 284 B.R. at 163. As he chose not to include the complete transcript, we are entitled to presume that the missing portions are not helpful to his position. In re Gionis, 170 B.R. 675, 680-81 (9th Cir. BAP 1994), aff'd, 92 F.3d 1192 (9th Cir. 1996). And we may affirm the bankruptcy court's factual findings where the record is inadequate to show clear error. In re Friedman, 126 B.R. 63, 68 (9th Cir. BAP 1991). Likewise, when, as here, the record is insufficient to show the lack of clear and convincing evidence.

**E.  Reasonableness of Sanctions**

The bankruptcy court did not abuse its discretion in deciding to impose sanctions; the remaining question is whether those sanctions were reasonable.

-19-

In <u>Crayton</u>, we adopted the ABA Standards:

> The ABA Standards set forth a model which can be used to categorize misconduct and to identify the appropriate sanction. They promote the thorough, rational consideration of relevant factors, and help to achieve consistency when imposing attorney discipline. We consider these factors as appropriate in determining a reasonable disciplinary sanction. <u>The failure to consider such factors constitutes an abuse of discretion</u>.

<u>Crayton</u>, 192 B.R. at 980 (emphasis added, citation omitted). We also recommended use of state bar standards and relevant case law as supplemental points of reference. <u>Id.</u>

The factors to be considered in determining an appropriate sanction are:

1. Whether the duty violated was to a client, the public, the legal system, or the profession;

2. Whether the lawyer acted intentionally, knowingly, or negligently;

3. Whether the lawyer's misconduct caused a serious or potentially serious injury; and

4. Whether there are aggravating and/or mitigating factors.

<u>Id.</u>

Aggravating factors include considerations which justify an increase in the degree of discipline imposed, such as a dishonest or selfish motive, refusal to acknowledge wrongful nature of conduct, and the vulnerability of the victim. <u>Id.</u> at 981 (citing ABA Standards 9.21 and 9.22). Mitigating factors, for example, the absence of a prior disciplinary record and imposition of other sanctions, may justify a reduction in the degree of discipline. <u>Id.</u> (citing ABA Standard 9.31 and 9.32).

Price contends that the bankruptcy court did not weigh the

-20-

appropriate factors. While the court made numerous findings and conclusions, and may have considered the relevant factors, the Opinion does not clearly reflect that consideration. It discusses the first two categories of ABA factors, and arguably the third, but does not reference possible aggravating or mitigating factors. This was technically an abuse of discretion. <u>Crayton</u>, 192 B.R. at 980. Given the severity of suspension, we will vacate the suspension and remand to the bankruptcy court for that consideration.

We note that ABA Standard 4.32 provides, "Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." Although Price argues that the duty of disclosure never arose because debtor never retained his services as a broker, we see no reason why his soliciting debtor for that purpose would not be sufficient to trigger the disclosure requirement, because it would have been material to her decision of whether to use his broker services.

## VI. CONCLUSION

The bankruptcy court was within its authority in sanctioning Price, and afforded him due process. Price has neither shown that the bankruptcy court clearly erred in its factual findings nor that it lacked clear and convincing evidence. But the record does not disclose that the court considered all appropriate factors in determining what sanction to impose. Accordingly, we VACATE the portion of the bankruptcy court's order suspending appellant and REMAND for further proceedings.

-21-

U.S. Bankruptcy Appellate Panel
of the Ninth Circuit
125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California  (626) 229-7220
Appeals from all other Districts (626) 229-7225


NOTICE OF ENTRY OF JUDGMENT


BAP No. NC-04-1534-BMaS


RE:  PATRICIA ANN LEHTINEN


A separate Judgment was entered in this case on _____10/11/05_____.


BILL OF COSTS:

Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the
Clerk of the Bankruptcy Court.  Cost bills should be filed with the Clerk
of the Bankruptcy Court from which the appeal was taken.
9th Cir. BAP Rule 8014-1


ISSUANCE OF THE MANDATE:

The mandate, a certified copy of the judgment sent to the Clerk of
the Bankruptcy Court from which the appeal was taken, will be issued
7 days after the expiration of the time for filing a petition for
rehearing unless such a petition is filed or the time is shortened or
enlarged by order.  See Federal Rule of Appellate Procedure 41.


APPEAL TO COURT OF APPEALS:

An appeal to the Ninth Circuit Court of Appeals is initiated by
filing a notice of appeal with the Clerk of this Panel.  The Notice
of Appeal should be accompanied by payment of the $255 filing fee
(effective November 1, 2003) and a copy of the order or decision on
appeal. Checks may be made payable to the U.S. Court of Appeals for
the Ninth Circuit.  See Federal Rules of Appellate Procedure 6 and the
corresponding Rules of the United States Court of Appeals for the Ninth
Circuit for specific time requirements.

CERTIFICATE OF MAILING
------------------------------------

        The undersigned, deputy clerk of the U.S. Bankruptcy
Appellate Panel of the Ninth Circuit, hereby certifies that a copy
of the document on which this certificate appears was mailed this date
to all parties of record to this appeal.

                        By: Edwina Clay

                        Deputy Clerk: October 11, 2005